UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANDREW WILLIAM PORCH,

       Petitioner,

                                    Case No. 06-11329

v.

                                    Honorable Patrick J. Duggan

BLAINE LAFLER,

       Respondent.

_____/


**OPINION AND ORDER DENYING PETITION**
**FOR A WRIT OF HABEAS CORPUS**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on June 18, 2008.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

This is a habeas action filed under 28 U.S.C. § 2254. Andrew William Porch

("Petitioner"), a state prisoner currently confined at the Michigan Reformatory in Ionia,

Michigan, challenges his convictions for first-degree murder, felon in possession of a

firearm, and possession of a firearm during the commission of a felony following a jury

trial in the Wayne County Circuit Court in 2002. In his *pro se* habeas application,

Petitioner raises claims concerning the effectiveness of trial counsel, the sufficiency of

the evidence, the great weight of the evidence, and cumulative error. For the reasons set

forth below, the Court will deny the petition for writ of habeas corpus with prejudice.

## I.     Factual Background

Petitioner's convictions arise from the shooting death of Darryl Wright in Ecorse,

Michigan on November 7, 2001.  Petitioner's initial trial, in which he was the sole

defendant charged with the crime, ended in a hung jury.  He was subsequently re-tried

with co-defendant Keith Antonio Finley.  The prosecution's theory was that the

defendants had a plan to ambush and kill Wright and that each defendant was guilty as

either a principal or an aider and abettor in the crime.

At trial, Jasmanika Theus, who was 16 years old and pregnant with a child by

Daniel Leonard at the time of the incident, testified that she witnessed the shooting.  She

explained that she was walking on Visger Street between 4:00 p.m. and 5:00 p.m. that day

when she saw Wright and Leonard standing in front of the Rocket Cab Company.  As she

approached, she came upon Petitioner who was walking toward the street through a

parking lot.  Petitioner put his hand to his mouth and said "shhh."  He then went to the

front of the cab company, pulled a gun out of his pocket and swung it (striking Leonard).

Petitioner then shot at Wright three times as he was attempting to run away.

Daniel Leonard testified that he was standing in front of the cab company with

Wright when he was suddenly struck on the head with hard object.  As he fell to the

ground, he heard two gunshots.  Leonard estimated that he was unconscious for two

minutes before he got up, ran into Woody's Liquor Bin, and asked if he (Leonard) had

been shot.  He then ran out of the liquor store and saw Wright lying face-down in a

nearby lot.  Leonard left the scene with a friend who had pulled up in a white Crown

Victoria or LTD.

Pamela Foxworth testified that she was riding her bicycle down Visger when she stopped and spoke to Wright near the liquor store. As she rode away, she heard gunshots, turned, and saw Wright run around the corner and fall down. She then saw co-defendant Finley approach from behind the cab company and fire at Wright. Foxworth said that she saw a second man come from behind the cab company and also shoot at Wright. She saw the second man's profile and said that it appeared to be Petitioner. Foxworth identified a man other than Petitioner as the second shooter at a pre-trial lineup.

Lenda McCarter testified that she was standing near the corner of 13th and Visger when she saw Wright walk through a lot toward the front of the liquor store. She heard a gunshot come from the front of the building and saw Wright run around the corner and fall. Co-defendant Finley came from somewhere, stood over Wright, and fired his gun at him. Finley then got into the driver's side of a green car parked nearby. McCarter saw a light-skinned black male, whom she did not believe was Petitioner, in the passenger seat of the green car.

George Hughs testified that he saw two people shooting Wright while he was lying on the ground and identified Petitioner as one of those shooters. Hughs said that he only saw the shooters' backs, but that he identified Petitioner based on his size and his hair at the time. Hughs admitted that he did not identify Petitioner at a pre-trial lineup.

Additional witnesses testified to hearing gunshots on the day of the incident, but did not see the perpetrators. For example, Darrell Taylor, an employee at Woody's Liquor Bin, testified that he heard five shots that day. Daniel Leonard then ran into the store and asked him whether he (Leonard) had been shot. Kathy Craft, an employee at a nearby

Tutti Fruity shop, recalled hearing multiple gunshots that day. When she looked outside, she saw a black man (presumably Leonard) lying on the ground. She then saw him get up and run into the liquor store. At the time, she believed that he was the person who had been shot.

The medical examiner testified that victim Darryl Wright died from multiple gunshot wounds. She identified seven entrance wounds, four to the front of the body and three to the back of the body. There were three front wounds to the chest and a front wound to the right upper thigh. The back wounds were to the upper right arm, the left thumb, and the right hand. No bullets were recovered from the body. Consequently, the medical examiner could not tell whether the wounds were inflicted by one or more firearms, nor could she identify the type of firearm(s) used in the shooting.

The police testimony indicated that five shell casings and two bullets were recovered from the scene. Ballistics testing was not conducted on the evidence, however, because the bag containing the evidence was left on an officer's desk and mistakenly discarded by a janitor.

Petitioner did not testify at trial nor present additional witnesses. The defense theory was mistaken identity. Defense counsel challenged the credibility of the witnesses and their identifications, as well as the sufficiency of the evidence presented.

At the close of trial, the jury found Petitioner guilty of first-degree murder, felon in possession of a firearm, and felony firearm. The jury also found co-defendant Finley guilty as charged. The trial court subsequently sentenced Petitioner to life imprisonment without the possibility of parole on the murder conviction, a concurrent term of two to

five years imprisonment on the felon in possession conviction, and a consecutive term of two years imprisonment on the felony firearm conviction.

## II.   Procedural History

Following his convictions, Petitioner filed a motion for new trial and/or *Ginther*[1] hearing with the trial court alleging ineffective assistance of trial counsel. Following oral arguments, the trial court denied the motion. Petitioner then filed an appeal as of right raising several claims of error, including the claims contained in the present petition. The Michigan Court of Appeals affirmed his convictions and sentence. *People v. Porch*, No. 244390, 2004 Mich. App. LEXIS 1846, 2004 WL 1488658 (Mich. Ct. App. July 1, 2004) (unpublished). Petitioner raised the same claims in an application for leave to appeal with the Michigan Supreme Court, which the court denied. *People v. Porch*, 472 Mich. 893, 695 N.W.2d 75 (2005).

Petitioner thereafter filed his federal petition for a writ of habeas corpus with this Court, raising the following claims as grounds for relief:

> I.   The trial court committed reversible error by denying his request for a *Ginther* hearing to develop a record for review on his claim that he was denied the effective assistance of counsel in violation of his Sixth Amendment rights when trial counsel: failed to attempt to sever his trial from that of a co-defendant; failed to investigate potentially exculpatory witnesses; failed to call exculpatory witnesses at trial; failed to properly impeach a key prosecution witness; failed to make appropriate pre-trial discovery requests; failed to move to suppress in-court identifications; failed to object to prosecutorial misconduct; failed to object to the

---

[1] *See People v. Ginther*, 390 Mich. 436, 212 N.W. 2d 922 (Mich. 1973).

presentation of extraneous information to the jury during deliberations; failed to investigate the possibility of a plea; and failed to request applicable jury instructions and object to inapplicable jury instructions.

II.   The trial court committed reversible error by failing to grant his motion for directed verdict where there was insufficient evidence to support a conviction of first-degree murder as either a principal or an aider and abettor.

III.   The trial court committed reversible error where it denied his motion for a new trial on the ground that the verdict was against the great weight of the evidence.

IV.   The cumulative effect of the errors in his case was so prejudicial that it denied him a fair trial.

Respondent has filed an answer to the petition asserting that it should be denied for lack of merit.

## III.   Analysis

### A. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Simply stated, under § 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts."  *Price v. Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848, 1852-53 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.* at 409, 120 S. Ct. at 1521.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411, 120 S. Ct. at 1522.  "Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner."  *Woodford v. Visciotti*, 537 U.S. 19, 25, 123 S. Ct. 357, 360 (2002).

**B. Ineffective Assistance of Counsel Claims**

Petitioner first asserts that he is entitled to habeas relief because trial counsel was ineffective for (1) failing to attempt to sever his trial from that of a co-defendant, (2) for failing to investigate potentially exculpatory witnesses, (3) for failing to call exculpatory witnesses at trial, (4) for failing to properly impeach a key prosecution witness, (5) for failing to make appropriate pre-trial discovery requests, (6) for failing to move to suppress in-court identifications, (7) for failing to object to prosecutorial misconduct, (8) for failing to object to the presentation of extraneous information to the jury during deliberations, (9) for failing to investigate the possibility of a plea, and (10) for failing to request and/or object to the jury instructions. Petitioner also contends that the trial court erred in denying his motion for a new trial without conducting an evidentiary hearing. Respondent contends that these claims lack merit and do not warrant habeas relief.

In order to establish ineffective assistance of counsel, Petitioner must show "that counsel's performance was deficient ... [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. Therefore, judicial scrutiny of counsel's

performance must be "highly deferential." *Id*. at 689, 104 S. Ct. at 2065. One's defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694, 104 S. Ct. at 2068.

A successful ineffective assistance of counsel claim requires proof that counsel's performance was deficient and that counsel's "errors deprived [Petitioner] of a fair trial." *Precin v. United States*, 23 F.3d 1215, 1218 (7th Cir. 1994). The court must assess the ineffective assistance claim in relation to the evidence of Petitioner's guilt. "[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.... [A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695-96, 104 S. Ct. at 2069. A petitioner will generally be unable demonstrate that any errors by counsel prejudiced the defense where "there is strong evidence of a petitioner's guilt and a lack of evidence to support his claim." *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).

Petitioner first asserts that counsel was ineffective for failing to move to sever his trial from that of his co-defendant. The Michigan Court of Appeals denied relief on this claim because it found that co-defendant Finley's counsel filed a motion to sever which the trial court denied. The court concluded that Petitioner could not establish that he was prejudiced by his counsel's failure to file a futile motion. *See Porch*, 2004 WL 1488658, at *1. This decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of the law or the facts. Given the trial court's denial of co-

defendant Finley's severance motion, Petitioner cannot establish that counsel was deficient or that he was prejudiced by counsel's failure to file such a motion. Defense counsel cannot be deemed deficient for failing to make a futile objection or motion. *See McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996). Habeas relief is not warranted.

Petitioner next asserts that defense counsel was ineffective for failing to interview and call potential alibi witnesses, his half-sister Gabrielle White and her friends. Defense counsel has a duty to conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that such investigation is unnecessary. *See, e.g., O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994); *Workman v. Tate*, 957 F.2d 1339, 1345-46 (6th Cir. 1992). The Michigan Court of Appeals denied relief on this claim, stating:

> Defendant Porch argues that he told defense counsel that he was with his half-sister and her friends at the time of the shooting and that counsel was ineffective for failing to interview these witnesses. In support of this argument, defendant presented the affidavit of his half-sister, who averred that she was with Porch at the time of the shooting and that she was never contacted by Porch's counsel. Defendant Porch did not present an affidavit stating that he informed trial counsel of this witness. At the hearing on Porch's post-trial motion, the trial court concluded that the half-sister's affidavit was "incredible," inasmuch as she claimed that she chose not to come forward to help her half-brother through two murder trials because she had an outstanding traffic warrant. Because the record lacks factual support for a finding that defendant Porch notified trial counsel that his half-sister was a potential alibi witness, and because of the credibility problems apparent from the affidavit submitted by Porch's half-sister, we agree that Porch has not shown that trial counsel was deficient for not contacting the witness, or that the failure to call the witness deprived Porch of a substantial defense.

*Porch*, 2004 WL 1488658, at *1.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. Petitioner has not shown that he notified defense counsel of the potential alibi witnesses. Further, Petitioner has failed to establish that he was prejudiced by counsel's failure to investigate or present his half-sister, Gabrielle White, as a witness. As discussed by the state courts, White's affidavit is inherently incredible given her statement that she failed to come forward at either of Petitioner's murder trials because she had an outstanding warrant for an unpaid traffic ticket. Further, given the eyewitness testimony identifying Petitioner as one of the shooters and White's familial relationship to Petitioner, her testimony would have been of questionable evidentiary value. Lastly, the Court notes that Petitioner has not submitted affidavits from any of the other witnesses whom he alleges could support his alibi claim. Petitioner has failed to show that counsel was ineffective under the *Strickland* standard or that counsel's conduct deprived him of a substantial defense. He is not entitled to habeas relief on this claim.

Petitioner relatedly asserts that defense counsel was ineffective for failing to produce prosecution witness Deni Belcher who testified at his first trial. Decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy, and the failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwidden v. Kapture*, 92 Fed. Appx. 309, 311 (6th Cir. 2004)

(unpublished); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). The Michigan Court of Appeals denied relief on this claim finding that the prosecution deleted Belcher from the witness list because she was in Kentucky and that Belcher's prior testimony did not demonstrate that her account was so strongly exculpatory that its absence deprived Petitioner of a substantial defense. *Porch*, 2004 WL 1488658, at *2.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. At the first trial, Belcher testified that she was driving down Visger with her boyfriend when she heard two gunshots. She turned and saw a heavyset black man run around the corner of a building followed by another man who was shooting him in the back. She saw the victim drop to the ground. She also saw the shooter get into a new, dark-colored Cadillac and exit the car a few blocks away. Belcher testified that Petitioner did not look like the shooter she observed. She did not see anyone else in the area of the shooting. (*See* 6/3/02 Trial Tr., pp. 151-56.) Given this testimony, trial counsel may have reasonably determined that Belcher's account of events was cumulative to that of Lenda McCarter and/or was not particularly exculpatory given that Belcher only saw one shooter (who had been identified as co-defendant Finley by McCarter and other witnesses). Even if the Court were to find counsel's performance deficient in this regard, the Court cannot say that counsel's conduct was so prejudicial that it deprived Petitioner of a substantial defense. Habeas relief is not warranted on this basis.

Petitioner next asserts that counsel was ineffective for failing to sufficiently impeach witness Jasmanika Theus with her preliminary examination testimony, which he

claims conflicted with her trial testimony.  The Michigan Court of Appeals denied relief

on this claim, stating:

> At trial, Theus testified that she saw Porch swing his gun
> before shooting it, but did not mention that at the preliminary
> examination. Porch contends that this inconsistency would
> have buttressed the defense argument that Theus was lying to
> protect the father of her child.
>
> We agree with the trial court that counsel was not ineffective
> for failing to pursue this line of impeachment. First, whether
> Theus saw Porch swing the gun was not a significant issue in
> the trial. Her failure to mention it at the preliminary
> examination was not such a material omission that it would
> have strongly cast doubt on the credibility of her trial
> testimony. Second, had counsel attempted to show that Theus
> did not mention the gun-swinging at the preliminary
> examination to imply that she was fabricating this fact at trial,
> counsel may have opened the door for the prosecutor to
> demonstrate that she had testified at Porch's first trial about
> seeing Porch swing the gun, and that there were other
> consistencies between her testimony at the preliminary
> examination, the first trial, and the second trial. MRE
> 801(d)(1)(B). The decision not to delve into this minor point
> was a matter of trial strategy that this Court will not
> second-guess.

*Porch*, 2004 WL 1488658, at *2.

The Michigan Court of Appeals' decision is neither contrary to *Strickland* nor an

unreasonable application thereof.  Defense counsel may have reasonably decided not to

impeach Theus with her preliminary examination testimony regarding Petitioner's

swinging of the gun because the matter was not particularly relevant and would have

opened the door to additional use of prior consistent testimony.  Further, the record

reveals that counsel attacked Theus' credibility by pointing out inconsistencies in her

testimony as to the actual shooting and by showing possible bias due to her relationship

with Daniel Leonard.  (*See* 6/3/02 Trial Tr., pp. 143-45.)  Petitioner has not shown that

counsel's performance fell below an objective standard of reasonableness or that he was

prejudiced by counsel's conduct.  He is therefore not entitled to relief on this claim.

Petitioner relatedly asserts that counsel was ineffective for failing to request

criminal and arrest records for Jasmanika Theus because he believes that she was a

convicted felon who fled confinement at a juvenile facility.  The Michigan Court of

Appeals denied relief on this claim, finding that Petitioner's allegations were unsupported

by any evidence.  *See Porch*, 2004 WL 1488658, at *2-3.  This Court agrees.  Petitioner

has presented no evidence to show that Theus has a criminal record or that any such

information would have been admissible for impeachment purposes.  It is well-settled that

conclusory allegations are insufficient to warrant habeas relief.  *See, e.g., Workman v.

Bell*, 160 F.3d 276, 287 (6th Cir. 1998)(stating that conclusory allegations of ineffective

assistance of counsel do not justify federal habeas relief); *see also Zettlemoyer v.

Fulcomer*, 923 F.2d 284, 301 (3rd Cir. 1991)(finding that bald assertions and conclusory

allegations do not provide sufficient basis to hold an evidentiary hearing in habeas

proceedings).  Habeas relief is not warranted on this claim.

Petitioner also asserts that trial counsel was ineffective for failing to seek

suppression of Pamela Foxworth's and George Hughs' in-court identifications because

neither witness was able to identify him at a pre-trial lineup.  The Michigan Court of

Appeals denied relief on this claim, stating:

> Porch's argument is legally unsound. The fact that a witness
> failed to identify a defendant at a pretrial identification
> procedure does not render a subsequent in-court identification

inadmissible. *People v. Barclay*, 208 Mich App 670, 676;528 NW2d 842 (1995); *People v. Hampton*, 138 Mich App 235, 238-239;361 NW2d 3 (1984).

Porch also claims that counsel should have moved to suppress Foxworth's in-court identification because, after the lineup in which she failed to identify him, an officer informed her that Porch was in the lineup. Porch cites *United States v. Wade*, 388 US 218, 228-229, 233; 87 S Ct 1926;18 L Ed 2d 1149 (1967), for the proposition, "Having a police officer notify a witness that a culprit has been caught and then bringing the defendant before the witness has been found impermissibly suggestive as has pointing out a suspect either before or during a lineup." However, none of those circumstances were present here. Porch cites no authority addressing the propriety of an officer informing a witness after a lineup that a suspect, who the witness failed to identify, was in the lineup and whether that information taints a subsequent in-court identification. Although this is a novel argument, it is Porch's responsibility to find authority to support it. It is not sufficient for a party "simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." Accordingly, we need not address this issue, and therefore, decline to do so.***

Because Porch has not shown that the identifications were inadmissible, he has not shown that counsel was ineffective for failing to move to suppress them, or that plain error occurred.

*Porch*, 2004 WL 1488658, at *3 (citation omitted).

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. First, given the Michigan Court of Appeals' determination that the in-court identifications were admissible under Michigan law, Petitioner cannot establish that counsel was ineffective. Defense counsel cannot be deemed deficient for failing to make a futile objection or motion. *See McQueen*, 99 F.3d at 1328. Second, Petitioner has

not established that any police comment to Foxworth that Petitioner was in one of the lineups made after the lineup (in which she identified another individual) violated his federal constitutional rights. Third, trial counsel may have reasonably determined that challenging Foxworth's and Hughs' less-than-positive identifications through cross-examination would benefit the defense. Petitioner has failed to overcome the presumption that counsel's conduct was sound trial strategy. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See, e.g., Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002)(holding that an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Habeas relief is not warranted on this claim.

Petitioner next asserts that trial counsel was ineffective for failing to object to the prosecutor's mischaracterization of the identification evidence. Petitioner contends that the prosecutor improperly argued that witnesses Jasmanika Theus, Pamela Foxworth, and George Hughs clearly identified him as one of the shooters. The Michigan Court of Appeals denied relief on this claim finding that the prosecutor's remarks were proper and that any objectionable remarks did not deprive Petitioner of a fair trial, such that Petitioner could not establish that counsel was ineffective for failing to object. *See Porch*, 2004 WL 1488658, at *3.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. While a prosecutor may not misstate the evidence or assume the existence of prejudicial facts not in evidence, *see Darden v. Wainwright*, 477 U.S. 168, 182, 106 S. Ct. 2464, 2472 (1986); *United States v. Everett*, 270 F.3d 986, 993 (6th Cir.

2001), a prosecutor has "leeway to argue reasonable inferences from the evidence." *See,*
*e.g., Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). The prosecutor's comments on
the identification evidence were not misstatements, but were an interpretation of the trial
testimony. The record indicates that Theus identified Petitioner by name, Foxworth
identified Petitioner by his profile, and Hughs identified Petitioner by his size and hair.
The prosecutor's comments that those witnesses identified Petitioner as one of the
shooters were not unreasonable given their testimony, particularly since the prosecutor
acknowledged the extent to which those witnesses identified Petitioner. Additionally,
some of the disputed comments were made in response to defense arguments. Given such
circumstances, trial counsel may have reasonably determined that an objection to the
prosecutor's comments was unwarranted or would have been detrimental to the defense.
The fact that trial counsel's strategy was ultimately unsuccessful does not mean that
counsel was ineffective. *See Moss*, 286 F.3d at 859. Petitioner has failed to overcome the
presumption that counsel's actions were sound trial strategy. *See Strickland*, 466 U.S. at
689. Therefore, habeas relief is not warranted on this issue.

Petitioner next asserts that his counsel was not present on September 13, 2002 when
Judge Morrow, substituting for Judge Waterstone, responded to jury questions regarding
witness nicknames. Petitioner claims that counsel was not able to object to Judge
Morrow's substitution or the submission of a list of witness nicknames to the jury. The
Michigan Court of Appeals denied relief on this claim finding that the record showed that
Petitioner's counsel was present for the proceedings. *See Porch*, 2004 WL 1488658 at
*4. The state court's factual findings are presumed correct, *see* 28 U.S.C. § 2254(e)(1);

*Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), and Petitioner has failed to rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, the Court agrees that Petitioner's claim is belied by the record. The trial transcript reveals that Petitioner's counsel was present for the disputed proceedings on September 13, 2002. (*See* 9/13/02 Trial Tr., pp. 4-6.) Petitioner is thus not entitled to habeas relief on this claim.

Petitioner alternatively asserts that if trial counsel was present for the foregoing proceedings, counsel was ineffective for failing to object to Judge Morrow's substitution and the submission of the witness nickname list to the jury. The Michigan Court of Appeals denied relief on this issue, finding that Petitioner had failed to establish that he was prejudiced by the trial court's actions or counsel's failure to object. *See Porch*, 2004 WL 1488658, at *5-6. This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Petitioner has not shown that he was prejudiced by counsel's conduct with regard to the judicial substitution or the witness nickname list. Conclusory allegations are insufficient to justify habeas relief. *See Workman*, 160 F.3d at 287. Furthermore, the Court notes that the nickname list, even if considered extraneous information, was cumulative to the witnesses' trial testimony, and Petitioner neither alleges nor establishes that the list was inaccurate or was otherwise prejudicial to his defense. Habeas relief is not warranted on this claim.

Petitioner also asserts that trial counsel was ineffective for failing to pursue a plea agreement. The Michigan Court of Appeals denied relief on this claim finding that counsel was not ineffective because no plea offer had been made and the prosecution was

not required to make any such offer. *See Porch*, 2004 WL 1488658, at *6. This decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. There is no indication in the record that the prosecutor contemplated or made any plea offer, and Petitioner has not shown that any such offer would have been forthcoming had defense counsel pursued the matter. As noted, conclusory allegations are insufficient to justify habeas relief. *See Workman*, 160 F.3d at 287. Petitioner is not entitled to relief on this claim.

Petitioner next asserts that counsel was ineffective for failing to object to the trial court's aiding and abetting instruction. The Michigan Court of Appeals denied relief on this claim finding that there was evidence that the defendants knew each other and that the two shooters converged on the victim simultaneously so as to support the instruction. *See Porch*, 2004 WL 1488658, at *6. This Court agrees. The record supports an inference that two shooters acted in concert to commit the crime. As noted, counsel cannot be deemed deficient for failing to make a futile objection or motion. *See McQueen*, 99 F.3d at 1328. Habeas relief is not warranted on this claim.

Petitioner relatedly contends that defense counsel was ineffective for failing to request an adverse inference instruction concerning the loss of shell casings and bullets, and that such a loss of evidence violated his constitutional rights. The Michigan Court of Appeals denied relief on this claim, stating:

> Defendants primarily rely on case law addressing *Brady* violations, which occur when the state suppresses evidence that is favorable to the defense. But the lost evidence in this case is only potentially exculpatory, and "no more can be said than that it could have been subject to tests, the results of

which might have exonerated the defendant[s]."*Arizona v. Youngblood*, 488 US 51, 57-58;109 S Ct 333;102 L Ed 2d 281 (1988)."Failure to preserve evidentiary material that may have exonerated the defendant will not constitute a denial of due process unless bad faith on the part of the police is shown." *People v. Hunter*, 201 Mich App 671, 677;506 NW2d 611 (1993) (citations omitted). Here, defendants have not shown bad faith. Sergeant DeLeon testified that the envelopes containing the bullets and shell casings were thrown away, and he believed that a janitor was responsible. Because there was no showing that the evidence was destroyed or discarded in bad faith, defendants' right to due process was not violated.

Moreover, because there was no showing of bad faith, counsel was not ineffective for failing to request an adverse inference instruction. A defendant is not entitled to an adverse inference instruction concerning the loss of potentially exculpatory evidence absent a showing of bad faith. *People v. Davis*, 199 Mich App 502, 514-515;503 NW2d 457 (1993). Defense counsel is not ineffective for failing to take an action that would have been futile.

*Porch*, 2004 WL 1488658, at *7 (footnote citation omitted).

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. Because Petitioner has not shown that the police acted in bad faith and the record indicates that the loss of evidence was inadvertent, Petitioner cannot establish that counsel was ineffective for failing to request an adverse inference instruction. Counsel cannot be deemed ineffective for failing to make a futile request. *See McQueen*, 99 F.3d at 1328. Habeas relief is not warranted.

Lastly, Petitioner contends that the trial court erred in denying his motion for new trial without granting him an evidentiary hearing on his ineffective assistance of counsel claims. However, a state court's alleged failure to properly apply state law or its own procedural rules, even if well-established, is not cognizable on federal habeas review.

This Court's power to grant a writ of habeas corpus only extends to errors in the application of federal law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991). Habeas relief is unavailable for errors of state law and a federal court will not review a state court's decision on a matter of state law. *See Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990); *Long v. Smith*, 663 F.2d 18 (6th Cir. 1981). Further, given the Court's determination that the foregoing claims lack merit, Petitioner has not shown the need for an evidentiary hearing. Habeas relief is not warranted.

## C. Insufficient Evidence Claim

Petitioner also asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his first-degree murder conviction. Respondent contends that this claim lacks merit.

A habeas court reviews a claim that the evidence at trial was insufficient for a conviction by asking whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)). This standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16, 99 S. Ct. at 2792, n. 16. When applying this standard, a habeas court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003). "It is the province of the fact-finder to weight the probative value of the evidence and resolve any

conflicts in testimony." *Id.* Therefore, "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Id.* (citations omitted).

Under Michigan law, first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *See People v. Kelly*, 231 Mich. App. 627, 642, 588 N.W.2d 480, 488 (1998); MICH. COMP. LAWS § 750.316. Premeditation and deliberation may be established by evidence of "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312, 318 (1992). The facts and circumstances of the killing may give rise to an inference of malice, including evidence that the defendant used a deadly weapon. *People v. Carines*, 460 Mich. 750, 759, 597 N.W.2d 130, 136 (1999). To convict a defendant under an aiding and abetting theory, the prosecution must establish that the crime was committed by the defendant or some other person, that the defendant performed acts or gave encouragement which aided or assisted in the commission of the crime, and that the defendant either intended to commit the crime or knew that the principal intended to commit the crime at the time he gave the aid or encouragement. *Id.* An aider and abettor's state a mind may be inferred from all the facts and circumstances. *Id.*

The Michigan Court of Appeals considered this issue in ruling on Petitioner's claim that the trial court erred in denying his directed verdict motion. Applying the *Jackson* standard, the court denied relief, stating in relevant part:

> Defendant Porch first focuses on the alleged discrepancy

between the witnesses' accounts of shots being fired at the decedent's back and the autopsy results showing that the fatal shots were to the front. According to Porch, "Because the prosecution presented no evidence as to the fatal shots which entered the front of Mr. Wright's body, the prosecution failed to show guilt of a principal beyond a reasonable doubt." This argument is without merit. Viewed in a light most favorable to the prosecution, *People v. Aldrich*, 246 Mich App 101, 122;631 NW2d 67 (2001), the evidence that defendants Porch and Finley repeatedly shot at the decedent was sufficient to allow the jury to find that one or both of the defendants fired the fatal shots. Although no one testified that they saw a shot to the decedent's front, the jury could infer that some of the shots that witnesses saw and heard being fired toward the decedent entered the front of his body and caused his death.

Defendant Porch's claim that the evidence of aiding and abetting was insufficient is also without merit. The evidence showed that two shooters converged on the decedent nearly simultaneously. The jury could reasonably infer that the two were acting in concert.

*Porch*, 2004 WL 1488658, at *7-8.

The Michigan Court of Appeals' decision is neither contrary to *Jackson,* nor an unreasonable application of federal law or the facts. Given the evidence that the victim suffered gunshot wounds to the front and back of his body, the testimony that two shooters chased down the victim, and the eyewitness identifications of Petitioner as one of those shooters, the jury could reasonably conclude that Petitioner acted with premeditation and deliberation in shooting the victim as either a principal or as an aider and abettor.

Petitioner's insufficient evidence claim essentially challenges the jury's credibility determinations and the inferences the jury drew from the evidence presented at trial. It is well-settled, however, that "[a] federal habeas corpus court faced with a record of

historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). It is the job of the trier of fact, not a federal habeas court, to resolve evidentiary conflicts, and this Court must presume that the trier of fact resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Given the evidence at trial, the Michigan Court of Appeals' decision was reasonable. Habeas relief is not warranted on this claim.

### D. Great Weight of the Evidence Claim

Petitioner relatedly asserts that he is entitled to habeas relief because the jury's verdict was against the great weight of the evidence. Respondent contends that this claim is not cognizable on federal habeas review and lacks merit. A federal habeas court has no power to grant habeas relief on a claim that a state conviction is against the great weight of the evidence. *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985); *Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003); *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). Such a claim "is not of constitutional dimension for habeas corpus purposes unless the record is so devoid of evidentiary support that a due process issue is raised." *See Griggs v. State of Kansas*, 814 F. Supp. 60, 62 (D. Kan. 1993). As discussed *supra*, such is not the case here. Petitioner is thus not entitled to relief on this claim.

### E. Cumulative Error Claim

Lastly, Petitioner asserts that he is entitled to habeas relief based upon the

cumulative effect of the alleged errors at trial. Respondent contends that this claim lacks merit. The Michigan Court of Appeals denied relief on this issue finding no error requiring reversal. *See Porch*, 2004 WL 1488658, at *9. This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Given the Court's determination that Petitioner's claims lack merit, he cannot establish that habeas relief is warranted based upon cumulative error. Further, the United States Court of Appeals for the Sixth Circuit noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002). Consequently, habeas relief is not warranted on this claim.

## IV.   <u>Conclusion</u>

For the reasons stated, the Court concludes that Petitioner is not entitled to habeas relief on the claims contained in his petition.

Accordingly,

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.


                                    s/PATRICK J. DUGGAN
                                    UNITED STATES DISTRICT JUDGE

Copies to:
Andrew William Porch
#351842
Michigan Reformatory
1342 W. Main St.
Ionia, MI 48846

Debra M. Gagliardi, A.A.G.